UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JENNIFER SCHOEWE,** | : | Case No. 1:17-cv-504 |
| Plaintiff, | : | Judge |
| v. | : | |
| | : | **COMPLAINT FOR DAMAGES AND** |
| **UNIVERSITY OF CINCINNATI,** | : | **DEMAND FOR JURY TRIAL** |
| Defendant. | : | |

Now comes Plaintiff, Jennifer Schoewe ("Plaintiff" or "Schoewe") and for her Complaint against Defendant University of Cincinnati ("UC") alleges as follows:

## Introduction

1. This action arises under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 (hereinafter, "Title IX") due to UC's deliberate indifference to student-on-student sexual assault.

## Parties, Jurisdiction, & Venue

2. Plaintiff Jennifer Schoewe is a citizen of the State of Ohio who resides in Hamilton County, Ohio. Ms. Schoewe is a graduate of UC. At the time of the events giving rise to this Complaint, Ms. Schoewe was beginning her junior year at UC.

3. UC is an educational institution and public university of the State of Ohio. Under Ohio Revised Code 3361.01, the University of Cincinnati's Board of Trustees is the governing body of UC. UC's primary campus is in Hamilton County, Ohio, in the U.S. District's Southern District of Ohio.

4. UC receives federal funding and financial assistance within the meaning of 20 U.S.C. § 1681(a) and is otherwise subject to Title IX.

5. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

6. Venue is proper in this district and division under 28 U.S.C. § 1391.

## General Allegations

7. On August 22, 2015, Ms. Schoewe attended a party hosted by another UC student at his apartment in the Clifton neighborhood near UC's main campus.

8. Several other UC students attended the party including Tyler Gischel.

9. Ms. Schoewe and Gischel had never met prior to the night of August 22, 2015.

10. Ms. Schoewe left the party in the early morning hours of August 23, 2015, and began to walk back to her apartment on the other side of campus.

11. Although Ms. Schoewe did not ask anyone to accompany her, Gischel followed Ms. Schoewe, allegedly to make sure Ms. Schoewe returned home safely because she was highly intoxicated.

12. Instead of walking her home, Gischel took Ms. Schoewe to his apartment where he sexually assaulted her on the morning of August 23, 2015.

13. Ms. Schoewe awoke in her own apartment later that day, with no memory of what happened after approximately 11:00 p.m. the previous night.

14. After awaking, Ms. Schoewe experienced severe pain in her abdomen and noticed some of her clothes were missing.

15. Over the next 48 hours, Ms. Schoewe started to piece together some of the events that occurred the prior night from her own physical pain and from talking to others who had been at the party. She contacted her mother who took her to Bethesda hospital to undergo a SANE examination which confirmed that she had been sexually assaulted.

16. Ms. Schoewe's mother called the UC Police Department on August 25, 2015, to report that her daughter had been sexually assaulted.

17. Ms. Schoewe went to UC's Title IX office on August 25, 2015, where she reported the incident to Jyl Shaffer - UC's Title IX coordinator.

18. Later that day, after talking to other students who had been at the party, Ms. Schoewe learned for the first time that Gischel was the one who had sexually assaulted her. Ms. Schoewe contacted Jyl Shaffer to report this new information on August 25, 2015.

19. On September 4, 2015, Ms. Schoewe met with Officer William Richey of the UCPD and Jyl Shaffer in UC's Title IX office. During this meeting, Ms. Schoewe confirmed that she wished to bring criminal charges against Gischel as well as administrative charges through UC's Title IX office.

20. Although the investigation was formally opened on September 4, 2015, UC waited weeks before taking any other action to protect Ms. Schoewe or otherwise help her cope with the stress of being a victim of sexual assault. Ms. Schoewe had no idea if she shared classes with her assailant, or if she would otherwise encounter him on campus. UC did nothing to address these concerns, leaving her to suffer in a state of anxiety and fear.

21. On September 16, 2015 UCPD interviewed Gischel and executed search warrants at his apartment. Following the interview, Officer Richey notified UC's Title IX office of the information he had gathered. Jyl Shaffer then reported to Officer Richey that she had completed the Title IX administrative complaint against Gischel as well as a "no-contact order" but that she was waiting on the interim suspension to be issued from UC's Office of Student Affairs. However, neither the suspension nor the "no contact order" were issued that day.

22. On September 17, 2015, Officer Richey met with Hamilton County Prosecutor Rick Gibson who advised Richey that the "case was covered from top to bottom with the interviews, and he was going to roll it out and get it assigned to get it put through Grand Jury."

23. Three weeks after Ms. Schoewe first reported the sexual assault, on September 18, 2015, Shaffer finally notified Officer Richey that UC's general counsel had confirmed that an interim suspension would be issued to Gischel and that Shaffer was just waiting to get the suspension to serve on Gischel. Richey and/or Shaffer then notified Ms. Schoewe that Gischel would be suspended on an interim basis and would not be permitted on campus.

24. However, later that same day, September 18, 2015, Denine Rocco - UC's Assistant Vice President and Dean of Students - contacted Officer Richey and stated that the Student Affairs office would need more information before issuing an interim suspension to Gischel. Rocco requested UCPD's entire investigative file. According to Officer Richey's police report: "I advised that I could not release the entire file at this point in the investigation, but had given Title IX Coordinator a synopsis of the investigation to this point, and advised her of the meeting with [Hamilton County Prosecutor] Rick Gibson. I was advised by Major Thornton to type a letter to Denine Rocco in reference to the status of the case. Once this was completed, Karen Kovach from General Council inquired as to what confirmation I had other than verbal from the Prosecutor that they would be seeking an indictment in the case. I advised I had no other confirmation. Jyl Shaffer then read the entire report, as well as the suspect statement and apology letter he had written to Ms. Schoewe. I was informed by Jyl Shaffer that the decision was made to not interim suspend Tyler Gischel at this time."

25. After learning that an interim suspension would not be issued, Richey and Shaffer were forced to explain to Ms. Schoewe that instead of the interim suspension UC would be issuing a "mutual no contact order."

26. Thus, later on September 18, 2015, Shaffer emailed Gischel to inform him that a complaint of sexual violence had been filed against him and the University had issued a "mutual no contact order" between him and Ms. Schoewe to remain in place during the

4

investigation and adjudication process. Gischel, however, was permitted to continue attending classes on UC's campus.

27. Despite multiple requests from Ms. Schoewe and her mother, UC did nothing to address this untenable situation and took no other steps to ensure Ms. Schoewe's safety and well-being throughout September, apparently waiting to see whether Gischel would be indicted on criminal charges before deciding whether to issue an interim suspension.

28. Throughout September of 2015, Ms. Schoewe experienced moments in which she would recall parts of the heinous assault that took place the evening, further adding to her fear and anxiety.

29. On October 2, 2015, Gischel was indicted on one count of Sexual Battery by the Hamilton County Grand Jury.

30. That same day Officer Richey forwarded the indictment to UC administrators to facilitate their issuance of the interim suspension.

31. Yet, four more days passed without UC taking any further action. Exasperated by the fact that UC had still not followed through with issuing the suspension, Ms. Schoewe's mother emailed Shaffer and former President Santa Ono with a screenshot of the indictment and demanded to know if and when Gischel would be suspended.

32. After receiving this email, UC finally issued the interim suspension to Gischel on October 6, 2015.

33. For more than a month, Shoewe was forced to live in fear and anxiety due to the University's failure to remove a sexual predator from its campus.

34. As a dedicated straight "A" student, she struggled to maintain focus on her rigorous academic schedule while she suffered from the emotional and physical burdens of Gischel's assault. Her grades began to suffer while UC failed to respond.

5

35. Moreover, despite the Office of Civil Rights' opinion that Title IX investigations should be completed within 60 days, UC did not hold Gischel's disciplinary hearing until March 15, 2016, and did not expel Gischel until March 28, 2016 –eight months after Shoewe reported the incident.

36. Ms. Schoewe was diagnosed with post-traumatic stress disorder and anxiety following Gischel's sexual assault and UC's failure to address the sexually hostile educational environment it allowed to persist in the wake of Gischel's sexual assault.

## COUNT I
## VIOLATION OF TITLE IX
### Deliberate Indifference to Sexual Harassment

37. Ms. Schoewe incorporates by reference each allegation above as if fully restated here.

38. Title IX prohibits federally-funded institutions such as UC from engaging in discrimination on the basis of sex. Sexual harassment is included within the meaning of "discrimination" under Title IX.

39. Sexual harassment of a student creates a hostile environment if the conduct is sufficiently severe that it denies or limits a student's ability to participate in or benefit from educational programs. A single instance of rape is sufficiently severe to create a hostile education environment.

40. Title IX requires universities to promptly investigate student complaints of sexual harassment, and to take interim measures to ensure that its students are not subjected to a hostile education environment. The failure to do so amounts to "deliberate indifference" for which UC may be held liable under Title IX.

41. The Office of Civil Rights has directed that a school may not wait for the conclusion of a criminal investigation before conducting its own Title IX investigation.

6

42. UC's own Title IX procedure states that, "Complaints will generally be resolved within 60 days of the filing of a complaint…"

43. The Office of Civil Rights' guidelines provided that the entire investigation process, which includes conducting the fact-finding investigation, holding a hearing, and determining what actions the school will take to eliminate the hostile environment and prevent its recurrence, including imposing sanctions against the perpetrator and providing remedies for the complainant should be completed within 60 days.

44. However, UC did not hold Gischel's disciplinary hearing until eight months after the complaint was filed.

45. UC failed to timely issue interim measures to provide Ms. Schoewe with a safe academic environment in violation of Title IX despite receiving numerous requests to do so from Ms. Schoewe and her mother.

46. UC violated Title IX by failing to issue Gischel a "no contact order" in a timely manner.

47. UC violated Title IX by failing to issue Gischel an "Interim Suspension" in a timely manner.

48. UC violated Title IX by deciding to wait until Gischel was indicted before issuing him an "Interim Suspension."

49. UC violated Title IX by waiting eight months before holding Gischel's disciplinary hearing.

50. UC's lack of action constitutes "deliberate indifference" in violation of Title IX.

51. As a direct and proximate result of UC's violations of Title IX, Ms. Schoewe was subjected to a hostile education environment while attempting to pursue her education on UC's campus.

52. As a direct and proximate result of UC's violations of Title IX, Ms. Schoewe was deprived of equal access to educational opportunities.

53. As a direct and proximate result of UC's violations of Title IX, Ms. Schoewe has suffered and continues to suffer significant, severe, and ongoing emotional distress and mental anguish.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully demands judgment against the University of Cincinnati as follows:

(a) Damages in amounts to be established at trial, including, without limitation, reimbursement for tuition expenses incurred while UC promoted a hostile education environment; payment of Plaintiff's expenses incurred as a consequence of the sexual assault; damages for deprivation of equal access to the educational benefits and opportunities provided by the University; and damages for past, present and future emotional pain and suffering, ongoing and severe mental anguish, and loss of past, present and future enjoyment of life;

(b) Pre- and post-judgment interest;

(c) Costs;

(d) Attorneys' fees pursuant to 42 U.S.C. § 1988(b); and

(e) Such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury as to all matters so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

        Respectfully submitted,

        /s/ Bradley M. Gibson
        Bradley M. Gibson (0087109)
        Julie M. Gugino (0074471)
        Christopher P. Finney (0038998)
        FINNEY LAW FIRM, LLC
        4270 Ivy Pointe Boulevard, Suite 225
        Cincinnati, Ohio 45245
        513.943.6661(o)
        Brad@FinneyLawFirm.com

        *Trial Attorneys for Plaintiff*