UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JENNIFER SCHOEWE | : | Case NO. 1:17-CV-504 |
| Plaintiff | : | Judge Timothy S. Black |
| v. | : | DEFENDANT UNIVERSITY OF CINCINNATI'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS |
| UNIVERSITY OF CINCINNATI | : | |
| Defendant | : | |

## I.    INTRODUCTION

Defendant University of Cincinnati ("UC") submits the following reply brief in support of its Motion to Dismiss (doc. 3) Plaintiff Jennifer Schoewe's ("Ms. Schoewe") one-count Complaint. No argument advanced in Ms. Schoewe's response memorandum provides an adequate basis for denying UC's motion.

Ms. Schoewe admits in footnote 1 of her response brief that she is not claiming that UC can be held liable for the off-campus sexual assault perpetrated by Mr. Gischel. (Doc. 5 at Page ID 35) Although that is the only gender-oriented misconduct alleged in Ms. Schoewe's Complaint, she seeks to hold UC liable because it waited two weeks to issue a no-contact order and two more weeks to issue an interim suspension to Mr. Gischel (even though the UCPD was conducting a criminal investigation in the meantime). Ms. Schoewe's contention is that because Mr. Gischel was not immediately removed from campus, she was made more "vulnerable" to harassment, and UC should be liable for that vulnerability even though she does not allege that she had any future interaction with Mr. Gischel, much less was harassed by Mr. Gischel. However, when analyzed against Supreme Court and Sixth Circuit authority, Ms. Schoewe's theory of liability cannot withstand scrutiny. Because there is no allegation that UC's purported

21472714.1

deliberate indifference actually caused any gender-oriented misconduct, Ms. Schoewe's Title IX deliberate indifference claim fails as a matter of law.

Even if the Court were to allow Ms. Schoewe to proceed with her "vulnerability" theory of liability, her allegations against UC do not meet the high bar necessary to plead a deliberate indifference claim.  Despite the Supreme Court's and Sixth Circuit's clear statement that the deliberate indifference standard does not mean that a school must expel every student accused of misconduct, Ms. Schoewe's theory of liability against UC means that it would.  Her claim is that because UC did not immediately take action to bar Mr. Gischel from campus, UC was deliberately indifferent.  Such a position cannot be squared with the Supreme Court's *Davis* opinion or its progeny in the Sixth Circuit.

Ms. Schoewe's claim also fails because she has not pled facts sufficient to support that any inaction from UC had the "systemic effect" of denying her access to UC's educational programs and activities.  Ms. Schoewe makes no allegations of gender-oriented harassment for which UC could be held liable.  In other words, UC is not alleged to have taken any action or failed to take any action "on the basis of [Ms. Schoewe's] sex" which could have had the systemic effect of denying her access to UC's educational programs and activities.  Even if there was some allegation of gender-oriented misconduct against UC, the high bar set for these types of claims cannot support that a two-week period, during which there is no allegation of additional harassment or discrimination, could have had a "systemic effect" of denying her access to UC's educational programs and activities.

## II.     ARGUMENT

### A.     Ms. Schoewe Admits That There is No Causal Relationship Between Any Purported Deliberate Indifference And Any Gender-Oriented Discrimination or Harassment.

In her response memorandum, Ms. Schoewe does not attempt to assemble any causation between UC's purported indifference in not issuing a no-contact order for two weeks and not issuing an interim suspension for one month (during which the UCPD was conducting an investigation and the matter was being presented by the Hamilton County Prosecutor's Office to a grand jury) and any actual harassment or discrimination that Ms. Schoewe was "subjected" to at any time following the off-campus sexual assault.  *See* 20 U.S.C. § 1681(a) (prohibiting conduct by a funding recipient which causes a person to have been "subjected to discrimination").

Ms. Schoewe also makes no attempt to discuss or distinguish any of the numerous cases cited by UC in its opening motion which have dismissed Title IX deliberate indifference claims because the plaintiff failed to allege that the institution's alleged deliberate indifference subjected the plaintiff to harassment.  *See K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1058 (8th Cir. 2017) ("At most, these allegations link the College's inaction with emotional trauma K.T. claims she experienced following the assault.  The complaint does not, however, allege that Culver-Stockton's purported indifference 'subject [ed] [K.T.] to harassment.'"); *Thomas v. Meharry Med. Coll.*, 1 F. Supp. 3d 816, 826–27 (M.D. Tenn. 2014) ("Plaintiff does not allege he had any further contact with Dr. Stines after reporting the alleged harassment in April 2012.  Although few facts exist in the record showing how Defendant responded to Plaintiff's report, because Plaintiff did not continue to experience sexual harassment once he put Defendant on notice of Dr. Stines's conduct, there is no basis to find Defendant's

3

response to Plaintiff's sexual harassment report amounted to deliberate indifference."); *Moore*, 2013 WL 960320, at *5 ("The critical piece missing from Moore's complaint is any allegation that she was 'subjected' to or experienced sexual harassment *after* notifying Severns about the assault occurring on September 14, 2011."); *Yoona Ha v. Nw. Univ.*, No. 14 C 895, 2014 WL 5893292, at *2 (N.D. Ill. Nov. 13, 2014) ("So as far as Plaintiff herself is concerned, according to the Complaint, there was no other contact. She, however, claims that knowledge of Ludlow's presence on the campus caused her considerable grief. However, this is not actionable under Title IX."); *Lopez v. Regents of Univ. of California*, 5 F. Supp. 3d 1106, 1125 (N.D. Cal. 2013) ("Even if Plaintiffs had adequately alleged actual knowledge or deliberate indifference on the part of the U.C. Regents, they failed to allege that this deliberate indifference caused Milanca being subjected to further discrimination or deprivation of Title IX rights."); *Elgamil v. Syracuse Univ.,* No. 99–CV–611 NPMGLS, 2000 WL 1264122, at *8 (N.D.N.Y. Aug. 22, 2000) ("The circuits that have taken the question up have interpreted [*Davis*] to mean that there must be evidence that actionable harassment continued to occur *after* the appropriate school official gained actual knowledge of the harassment.") (citing *Reese v. Jefferson Sch. Dist.,* 208 F.3d 736, 740 (9th Cir. 2000); *Soper v. Hoben,* 195 F.3d 845, 855 (6th Cir. 1999); *Murreel v. School Dist. No. 1, Denver Colo.,* 186 F.3d 1238, 1246 (10th Cir. 1999); *Wills v. Brown Univ.,* 184 F.3d 20, 26-27 (1st Cir. 1999)).

Instead, Ms. Schoewe cites to a handful of out-of-circuit cases which have found that a Title IX deliberate indifference claim can proceed despite the fact that there is no allegation that the institution's purported deliberate indifference actually <u>caused</u> any actionable discrimination or harassment. The handful of out-of-circuit courts that have concluded that a plaintiff does not have to plead additional acts of harassment or

4

discrimination after the initial sexual assault in order to plead a Title IX claim are not faithful to Title IX's statutory language or the Supreme Court's formative decision in *Davis*. 526 U.S. at 642-43 ("[W]e concluded in *Gebser* that recipients could be liable in damages only where their own deliberate indifference effectively 'cause[d]' the discrimination.") (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998)).

Title IX requires that a person must have been "subjected to discrimination" for there to be liability against the school. Because a school is only liable for conduct that took place in conjunction with an "education program or activity" and for which the school had actual knowledge, a plaintiff must be able to point to some other "discrimination" (or in most of these cases "harassment") that she was "subjected to" in order for Title IX to apply. While inaction that results in actual harassment can create liability, it strains credulity to conclude that inaction which results in no actual harassment could be actionable under Title IX.

The Supreme Court has described harassment as "discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). The Equal Employment Opportunity Commission defines sexual harassment as "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature . . . ." 29 C.F.R. § 1604.11(a). Similarly, the Department of Education has defined sexual harassment to "include unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature." Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, 62 Fed.Reg. 12,034 at 12,038 (1997). "Taken together, a claim of sexual

5

harassment must allege sex-specific conduct aimed to humiliate, ridicule, intimidate, or insult." *Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481, 488 (D. Md. 2015).

Instead of following the Supreme Court's and pertinent federal agencies' definitions of harassment, the opinions on which Ms. Shoewe relies seem to have concluded that inaction itself following a peer-on-peer assault (for which the school is not liable) which results in no instances of humiliation, ridicule, intimidation, insult, or physical contact could still be considered "harassment." Interestingly, the Supreme Court in its *Davis* decision noted that the "requirement that recipients receive adequate notice of Title IX's proscriptions also bears on the proper definition of 'discrimination' in the context of a private damages action." 526 U.S. at 649. The Supreme Court concluded that because it had "previously determined that 'sexual harassment' is 'discrimination' in the school context under Title IX," it was "constrained to conclude that student-on-student sexual harassment, if sufficiently severe, can likewise rise to the level of discrimination actionable under the statute." *Id*. (citing *Bennett v. Kentucky Dept. of Ed.*, 470 U.S. 656, 665–666 (1985)). There has been no "adequate notice" that inaction itself following a peer-on-peer assault (for which the institution is not liable) which results in no instances of humiliation, ridicule, intimidation, insult, or physical contact could still be considered "sex discrimination" or "sexual harassment."

This leads to another point – in order for conduct (or lack of conduct) to be actionable under Title IX, it must be gender-oriented as Title IX only applies to conduct that was improperly taken "on the basis of sex." *See Davis*, 526 U.S. at 650-52; 20 U.S.C. § 1681(a). It is not disputed that Mr. Gischel's sexual assault was gender-oriented, but it also cannot be disputed that UC is not liable for the sexual assault itself. Thus, in the line of cases where courts have said that there is no need to

6

show additional acts of harassment or discrimination, those courts are allowing a Title IX claim to proceed despite the fact that there is no gender-oriented conduct for which the school could be liable. However, the line of cases which require a showing of additional harassment or discrimination (*e.g.*, *K.T.*, *Thomas*, *Moore*, *Yoona Ha*, etc.) follow the Supreme Court's opinion in *Davis* (and *Gebser*) by only allowing a Title IX claim to proceed where the plaintiff can show that the school's "own deliberate indifference effectively 'caused' the discrimination" or harassment. *Davis*, 526 U.S. at 642-43 (citing *Gebser*, 524 U.S. at 291). In other words, the school is liable for the gender-oriented discrimination or harassment caused by its own deliberate indifference.

Here, Ms. Schoewe admits in footnote 1 of her response memorandum that she "has not alleged that UC is liable for the actual assault," but that is the only gender-oriented misconduct that has been alleged. (Doc. 5 at PageID 35) Ms. Schoewe is correct that one incident of sexual assault can give rise to a claim under Title IX, but that one incident must be something for which she could hold UC liable. *See M.D. v. Bowling Green Indep. Sch. Dist.*, No. 115CV00014GNSHBB, 2017 WL 390280, at *5 (W.D. Ky. Jan. 27, 2017), *aff'd*, *M.D. by & through Deweese v. Bowling Green Indep. Sch. Dist.*, No. 17-5248, 2017 WL 4461055 (6th Cir. Oct. 6, 2017) (rejecting plaintiff's argument that a single event can trigger liability where it was undisputed that the defendant did not have knowledge of that event). She admits that she cannot hold UC liable for that one incident, and she alleges no other incidents of gender-oriented discrimination or harassment that she suffered after reporting that one incident.

In her response memorandum, Ms. Schoewe too narrowly focuses on the Supreme Court's use of the word "vulnerable" in its *Davis* opinion. The full statement from the Supreme Court includes: "If a funding recipient does not engage in

7

harassment directly, it may not be liable for damages unless its deliberate indifference 'subject[s]' its students to harassment. That is, the deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 644-45 (1999) (quoting Random House Dictionary of the English Language 1415 (1966) (defining "subject" as "to cause to undergo the action of something specified; expose" or "to make liable or vulnerable; lay open; expose"); Webster's Third New International Dictionary 2275 (1961) (defining "subject" as "to cause to undergo or submit to: make submit to a particular action or effect: EXPOSE")). Where Ms. Schoewe's argument (and that advanced by the courts she cites) misses the mark is that the deliberate indifference has to have made the plaintiff "vulnerable to it" – meaning that the vulnerability caused by the deliberate indifference still has to have led to actual harassment.

In fact, if vulnerability alone was the proper standard, it appears that the only action UC could have taken which would have prevented liability is immediately removing Mr. Gischel from campus the minute that Ms. Schoewe reported the assault. However, such an argument ignores the two important considerations set forth by the Supreme Court in *Davis* and continually cited by the Sixth Circuit: (1) "Victims do not have a right to particular remedial demands," and (2) "courts should not second guess the disciplinary decisions that school administrators make." *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000) (citing *Davis*, 526 U.S. at 648); *see also Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 365 (6th Cir. 2012) (same).

If the only remedy that would have made Ms. Schoewe feel less than vulnerable on UC's campus was Mr. Gischel's removal and that vulnerability is sufficient to trigger

8

21472714.1

UC's liability, Ms. Schoewe then has "a right to [a] particular remedial demand." Similarly, despite the fact that "courts should not second guess the disciplinary decisions that school administrators make," Ms. Schoewe's "vulnerability" standard would allow courts to second guess every disciplinary decision made by an educational institution short of immediately removing the accused from campus. That cannot be what the *Davis* court meant by using the word "vulnerable." *See M.D. by & through Deweese v. Bowling Green Indep. Sch. Dist.*, No. 17-5248, 2017 WL 4461055, at *3 (6th Cir. Oct. 6, 2017) ("To hold otherwise would effectively foreclose remedial measures short of expulsion and undermine the 'flexibility' that the *Davis* Court took care to guard.").

Because there is no allegation that UC's purported deliberate indifference actually caused any gender-oriented misconduct against Ms. Schoewe, her Title IX deliberate indifference claim fails as a matter of law.

### B. Ms. Schoewe Has Not Pled Allegations That Meet the High Bar Necessary To Establish Deliberate Indifference.

"The deliberate indifference standard set forth in *Davis* sets a high bar for plaintiffs to recover under Title IX." *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 848 (6th Cir. 2016) (citing *Doe v. Galster,* 768 F.3d 611, 619 (7th Cir. 2014)). "It requires only that school administrators respond to known peer harassment in a manner that is not 'clearly unreasonable in light of the known circumstances.'" *Id*. (quoting *Davis,* 526 U.S. at 648). "This standard is not a 'mere reasonableness standard,' and 'there is no reason why courts . . . [can]not identify a response as not clearly unreasonable as a matter of law.'" *Id*. (quoting *Davis*, 526, U.S. at 649).

A funding recipient "is not required to 'remedy' sexual harassment nor ensure that students conform their conduct to certain rules, but rather, 'the recipient must

9

merely respond to known peer harassment in a manner that is not clearly unreasonable.'" *Vance*, 231 F.3d at 260 (quoting *Davis,* 526 U.S. at 648–649). "The deliberate indifference standard 'does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." *Id.* (quoting *Davis*, 526 U.S. at 648). "The standard does not mean that recipients must expel every student accused of misconduct." *Id.* (citing *Davis*, 526 U.S. at 526).

Despite the Sixth Circuit's clear statement that the deliberate indifference standard "does not mean that recipients must expel every student accused of misconduct," Ms. Schoewe's theory of liability against UC means that it would. Her claim is that because UC did not immediately take action to bar Mr. Gischel from campus, UC was deliberately indifferent. Such a position cannot be squared with the Supreme Court's *Davis* opinion or its progeny in the Sixth Circuit.

The Sixth Circuit's most recent opinion analyzing a Title IX deliberate indifference claim was issued ten days prior to Ms. Schoewe's response brief. In *M.D. by & through Deweese v. Bowling Green Indep. Sch. Dist.*, the plaintiff, a high school cheerleader, was sexually assaulted by a classmate and fellow cheerleader. 2017 WL 4461055, at *1. The classmate was removed from school shortly after the assault, but was allowed back in the next semester. *Id.* But, the plaintiff's attacker was prohibited from having any contact with the plaintiff and the school ensured that the parties did not have classes together. *Id.*

Nonetheless, while back at the same school, the plaintiff saw her attacker nearly every day, passed him en route to class, and saw him during homecoming after he graduated. *Id.* at * 2. The plaintiff testified that those sightings made her

uncomfortable and caused her considerable anxiety, but she admitted that after the assault, she and her attacker never had a single on-campus interaction.  *Id*.

Affirming the district court's dismissal of the plaintiff's Title IX deliberate indifference claim, the Sixth Circuit said: "We understand, of course, that [the plaintiff] would have preferred not to see [her attacker] at school.  She had good reason to feel that way.  Yet, as the Supreme Court has instructed, courts must 'refrain from second-guessing the disciplinary decisions made by school administrators,' who are *not* required to 'engage in particular disciplinary action' in response to reported harassment."  *Id.* (quoting *Davis*, 526 U.S. at 648) (rejecting argument that "nothing short of explusion of every student accused of misconduct . . . would protect school systems from liability").  Continuing, the Sixth Circuit said:  "Here, the administrators formulated a remedial policy that was successful not only in preventing [the attacker] from harassing [the plaintiff] after he returned to campus but in preventing any interaction whatsoever.  Under the circumstances, that response was not clearly unreasonable."  *Id.* (citations omitted).

Similar to *Deweese*, Ms. Schoewe does not allege that she had any interaction with Mr. Gischel after the initial assault.  Where this case deviates from *Deweese*, and establishes more firmly that Ms. Schoewe cannot meet the high bar of deliberate indifference, is that Ms. Schoewe does not allege that she even saw Mr. Gischel on campus after the initial assault.   Additionally, Ms. Schoewe's response brief ignores that in between when she advised UC and UCPD that she wanted to pursue criminal charges and disciplinary action and when UC issued the no-contact order, the UCPD performed its investigation, including interviewing Mr. Gischel and executing a search warrant at

11

his off-campus apartment.[1]  (Doc. 1 at Page ID 3)  UC's response was not clearly unreasonable.

Ms. Schoewe next argues that her allegations support that UC failed to follow Office for Civil Rights' ("OCR") guidance and that is sufficient to plead a deliberate indifference claim.  Although Ms. Schoewe does not cite to which OCR guidance she is referencing, UC presumes she is talking about the often-discussed April 14, 2011 Dear Colleague Letter ("DCL") and the 2014 Questions and Answers on Title IX and Sexual Violence ("Q&A").  First, the Department of Education has withdrawn that guidance, in part because those were never subjected to notice and the opportunity for public comment.  *See* https://www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf.  (last accessed, October 18, 2017).  Second, it is the Supreme Court's decision in *Davis* and its progeny in this Circuit which governs a Title IX deliberate indifference claim, not guidance documents from OCR.[2]  *See Doe v. Bibb Cty. Sch. Dist.*, 126 F. Supp. 3d 1366, 1376 n.10 (M.D. Ga. 2015), *aff'd*, 688 F. App'x 791 (11th Cir. 2017) (rejecting the plaintiff's attempt to rely on Department of Education guidance to help formulate the elements of a deliberate indifference claim where the Supreme Court in *Davis* has already established the "very limited circumstances under which a funding

---

[1] Ms. Schoewe's reliance on *Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646 (W.D. Tex. 2017) is erroneous.  In that that case, the court noted that the allegations survived a motion to dismiss because each plaintiff "alleges that Baylor did nothing (or almost nothing) in response to the reports of sexual assault." *Id*. at 660-61.  As discussed above, that is not what happened here.  After Ms. Schoewe advised that she wished to seek criminal and administrative sanctions, UCPD began investigating.  After interviewing Mr. Gischel and searching his apartment, a no-contact order was issued.  After Mr. Gischel was indicted, UC issued an interim suspension.  It cannot be said that UC did "nothing (or almost nothing) in response to" Ms. Schoewe's report of sexual assault.

[2] Even if the OCR guidance were still in place and this Court considered it persuasive, the now-withdrawn Q&A stated: "OCR does not require a school to complete investigations within 60 days; rather OCR evaluates on a case-by-case basis whether the resolution of sexual violence complaints is prompt and equitable."  https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf at p. 32 (last accessed, October 18, 2017).  OCR specifically noted that "the investigation process may take longer if there is a parallel criminal investigation or if it occurs partially during school breaks." *Id*.  As the Court can discern from its experience with the criminal litigation process, the criminal process extended much longer after Mr. Gischel was initially indicted on October 2, 2015.

12

recipient can be liable in a private cause of action under Title IX for student-on-student sexual harassment"); *Moore v. Regents of the Univ. of California*, No. 15-CV-05779-RS, 2016 WL 2961984, at *5 (N.D. Cal. May 23, 2016) ("All told, in deciding if Moore adequately has pleaded deliberate indifference, *Davis* and its progeny—not the DCL and Q&As— must govern.") (citation omitted); *S.D. ex rel. Davis v. Houston Cty. Sch. Dist.*, No. 5:12-CV-228 MTT, 2013 WL 4505897, at *6 (M.D. Ga. Aug. 22, 2013) ("In any event, and whatever weight might be appropriate for the OCR's findings, the undisputed facts before this Court establish that the Defendant was not deliberately indifferent.").

Lastly, Ms. Schoewe closes this section of her response brief by stating that whether UC was deliberately indifferent is a question of fact and quoting the following provision from *Williams ex rel. Hart v. Paint Valley Local School District*: "Where a school district has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances." 400 F.3d 360, 364 (6th Cir. 2005). But, in this case, just like in *DeWeese*, UC's no-contact order and its interim suspension apparently were effective as there is no allegation that Ms. Schoewe had any interaction with Mr. Gischel after the initial assault.

Not every question of deliberate indifference is a question of fact. As the Supreme Court said in *Davis*, "In an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not 'clearly unreasonable' as a matter of law." 526 U.S. at 649. This is one of those appropriate cases.

13

> **C. This is Not One of the "Unlikely" Cases Where One Instance of Peer-on-Peer Harassment Can Be Said to Have a Systemic Effect on Educational Programs or Activities.**

A funding recipient is "only liable for its own misconduct, since Title IX requires that [t]he recipient itself . . . 'exclude persons from participation in . . . deny persons the benefits of, or . . . subject persons to discrimination under' its 'programs or activities.'" *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012) (quoting *Davis*, 526, U.S. at 640-41). "*Davis* limits liability 'to cases having a systemic effect on educational programs or activities.'" *Id.* (quoting *Davis*, 526 U.S. at 653).

The Supreme Court in *Davis* said, "a single instance of sufficiently severe one-on-one peer harassment could be said to have such an effect, [but] we think it unlikely that Congress would have thought such behavior sufficient to rise to this level in light of the . . . amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment." *Davis*, 526 U.S. at 652-53. Importantly, the single instance of one-on-one peer harassment that the Supreme Court was referring to was one for which the educational institutional could be held liable. Here, there are no instances of gender-oriented harassment for which UC could be held liable. And, even if Ms. Schoewe is permitted to advance a theory of liability based solely on "vulnerability," there was only a two-week period between when she asked UC and UCPD to pursue the matter and when Mr. Gischel was issued a no-contact order. This is not one of the "unlikely" cases of one-on-one peer harassment that could be said to have had a "systemic effect" of denying Ms. Schoewe access to UC's educational programs and activities.

14

### III. CONCLUSION

For each and all of the foregoing reasons and those reasons offered in its opening motion, Defendant University of Cincinnati requests that this Court dismiss Plaintiff Jennifer Schoewe's Complaint pursuant to Federal Rule of Civil Procedure 12.

Respectfully submitted,

MICHAEL DEWINE
Attorney General of Ohio

By: /s/ Doreen Canton
Doreen Canton (0040394)
Evan T. Priestle (0089889)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH  45202
Tel:  (513) 381-2838
Fax:  (513) 381-0205
canton@taftlaw.com
epriestle@taftlaw.com

Attorneys for Defendant
University of Cincinnati

<u>CERTIFICATE OF SERVICE</u>

I certify that on October 30, 2017, I filed the Defendant University of Cincinnati's Reply Brief in Support of Its Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all registered parties.

<u>/s/ Doreen Canton</u>